UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-255 (HHK) |
| | : | |
| v. | : | |
| | : | |
| DAVID E. MCINTOSH, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this memorandum in aid of sentencing of defendant David E. McIntosh. Defendant pled guilty to bank fraud relative his involvement in the cashing of four stolen checks totaling approximately $96,229.03. As is discussed below, the government requests that the Court imposes a sentence within the applicable Sentencing Guidelines range of 12-18 months in Zone D, but defers to the Court as to the length and type of guidelines sentence, including any applicable fine, but requests that defendant be ordered to make restitution for the loss in this matter.

**I. FACTUAL BACKGROUND**

On October 2, 2007, the government filed a one-count Information charging defendant with bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. Presentence Investigation Report ("PSR"), at p. 3, ¶ 1. On October 19, 2007, defendant pled guilty to the Information. *Id.*, ¶ 3. Sentencing is now set before the Court on April 4, 2008, at 10:15 a.m. *Id.*, at p. 1.

According to the statement of offense filed in this matter and the PSR, at pp. 4-5, ¶ 7-13, defendant was hired as a temporary employee at Applied Technology Systems, Inc., in Arlington, Virginia, from April 18, 2005, to mid-August of 2005, as an Accounts Payable Clerk. Defendant's

job duties included filing, data processing and assistance with accounts payable.

In the middle of August of 2005, defendant resigned from Applied Technology with one day's notice. Several weeks after defendant's departure, a bank reconciliation conducted by the Chief Financial Officer for Applied Technology revealed four Applied Technology checks out of sequence. An investigation by the Accounting Department Controller for Applied Technology revealed four checks were stolen and fraudulently processed with the forged signature of the CFO, who was the authorizing official, for a loss of $96,229.03. The four checks included: (1) one made payable to a trucking company in California in the amount of $43,200.27; (2) one made payable to the California company in the amount of $48,728.52; (3) one made payable to subject #1 in the amount of $3,000.12; and (4) one made payable to subject #2 in the amount of $1,500.12.

The stolen checks were drawn on the account of Applied Technology at Sky Bank, an FDIC insured bank headquartered in Bowling Green, Ohio. The bank incurred over $96,000 worth of loss as a result of this fraud.

It was subsequently determined that Subject #1 met defendant while she was attending Howard University in Washington, D.C. Subject #1 recalled defendant asking subject #1 to cash a check for defendant from work, as a favor. Defendant provided the check to subject #1 the next day. Subject #1 deposited the check which was made payable to subject #1 in the amount of $3,000.12, into subject #1's bank account in Washington, D.C. Subject #1 then wrote defendant a check for $3,000 from subject #1's checking account.

Defendant asked subject #2 to cash a check in the amount of $1,500.12 for subject #2 in August of 2005. When subject #2 asked defendant why the check was made out to subject #2, defendant told subject #2 not to worry about it. After depositing the check in subject #2's account

in Miami, Florida, subject #2 provided defendant subject #2's ATM number which he used to withdraw the money from subject #2's account.

When confronted, defendant admitted to law enforcement agents that he stole all four blank checks from Applied Technology while working at the company. Defendant said he filled in two of the blank stolen checks on a typewriter at Howard University in the presence of subject #3 who was a friend of subject #1. One was made out to subject #1 in the amount of $3,000.12, and the other was made out to subject #2 in the amount of $1,500.12. Defendant said he gave the other two blank stolen checks to subject #3 who was present with him as he typed up the first two checks.

In August of 2005, checks #1 and #2 were drawn on Applied Technology's account for $43,000.27 and $48,728.52, respectively. The checks had been deposited into the California company's bank accounts at the branches, respectively, in Washington, D.C., and in Riverdale, Maryland.

## II. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing a defendant. These factors are discussed below numbered as they are in Section 3553(a).

(1) The Court should consider the nature and circumstances of the offense. Here, the offense was a abuse by defendant of the trust put in him by his employer that resulted in significant financial loss to the employer's bank. Defendant also involved others in his criminal activity, thereby exposing them to potential criminal prosecution as well as expanding the web of criminal conduct in this matter.

The Court should also consider the history and characteristics of the defendant. In this

matter, defendant has no known criminal record, PSR, at p. 6, ¶¶ 27-28, a spotty work record, *id.*, at p. 9, ¶¶ 45-51, and apparently is in the country illegally from his home country of Jamaica. *Id.* at p. 7, ¶ 35.

(2) The Court should also consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the pubic; and (D) to provide defendant with appropriate education or vocational training. In this matter, as discussed above, the offense was serious and requires adequate punishment. The sentence should also be of such a nature so as to deter others from engaging in similar conduct and to protect the public from other criminal acts by defendant. As to the final consideration, defendant does not appear to need further education or vocational training. PSR, at p. 9, ¶¶ 43-44.

(3) The Court should consider the kinds of sentences available. The maximum term of imprisonment for this offense is 30 years, with a term of supervised release of not more than 5 years. PSR, at pp. 10-11, ¶¶ 55 and 58.

(4) The Court should also consider the sentencing range established by the United States Sentencing Guidelines ("USSG"). As to these guidelines, the probation officer believes, and the government concurs, that the defendant's resulting Total Adjusted Offense Level for the offense is 13, his Criminal History category is I, and his USSG range is 12 to 18 months. PSR, at p. 6, ¶ 26, and p. 10, ¶ 56. Because the applicable guidelines range is in Zone D, defendant is not eligible for probation. *Id.*, at p. 11, ¶ 62. The applicable fine range is $30,000 to $1,000,000. *Id.*, at p. 12, ¶ 69.

(5) The Court should consider any pertinent policy statement issued by the Sentencing Commission. The government is not aware of any pertinent statements beyond those captured in the

applicable Sentencing Guidelines range, which is discussed above.

(6) Moreover, the Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records. Here, a guidelines sentence would help prevent such disparities between defendant and similar defendants.

(7) Finally, the Court should consider the need to provide restitution. In this matter, restitution in the amount of $96,229.03 is owed by defendant and any other individuals involved in this crime. PSR, at p. 5, ¶ 13, and p. 12, ¶ 72.

### III. DEFENDANT'S LEVEL OF COOPERATION/ U.S. ATTORNEY'S OFFICE DEPARTURE COMMITTEE

In the plea letter in this case, there is standard language to the effect that defendant agreed to cooperate with the government. Plea Letter, August 31, 2007, at pp. 4-5, ¶ 7. The government, in return, agreed to advise the Court "of the full nature, extent, and value of the cooperation provided by [defendant] to the United States." *Id.*, at p. 5, ¶ 9.

In order to determine what potential cooperation defendant might be able to provide to the government, representatives of the government met with defendant twice after he had entered his guilty plea. Based on those discussions, as well as discussions between defendant and the FBI agents prior to the plea, it is clear to the undersigned attorney for the government that there are no productive areas in which the defendant could provide cooperation to the government. Accordingly, other than discussions with defendant about what information he has, the government has not requested anything further from defendant.

Also pursuant to the plea letter, the government agreed to inform the Departure Committee of the United States Attorney's Office for the District of Columbia ("Departure Committee") of the

full nature, extent, and value of the cooperation provided by the defendant to the United States. *Id.* The undersigned attorney has complied with this obligation. The Departure Committee found that the defendant did not provide substantial assistance in the investigation or prosecution of another person or entity and did not recommend a downward departure. Accordingly, the government is *not* moving for a departure downward in the offense level of the defendant under the Sentencing Guidelines.

## IV. **RECOMMENDATION**

Defendant admitted stealing the four blank checks that were filled in and cashed in this case. Although he denied involvement in the cashing of the larger checks, it was his actions that made those checks available to be fraudulently cashed. This is serious conduct that needs to be adequately punished. Defendant violated the trust of his employer and caused significant financial loss for his employer's bank. Moreover, he involved others in his criminal conduct potentially exposing them to prosecution and expanding the web of criminal conduct in this matter.

To his credit, however, once defendant was confronted by the investigators in this matter, he admitted his illegal actions. Furthermore, he agreed to plead guilty pre-indictment.

Accordingly, the government requests that the Court impose a sentence within the guidelines range of 6-12 months, but defers to the Court as to the actual length and type of guidelines sentence. *See* United States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness"). This deference includes as to what amount of fine if any defendant should pay. *See* PSR, at p. 10, ¶ 54

("Based on the large amount of restitution, a fine is not recommended."). As stated above, defendant should be ordered to make restitution to Sky/Huntington Bank of $96,229.03.

>Respectfully Submitted,
>
>JEFFREY A. TAYLOR
>UNITED STATES ATTORNEY
>D.C. Bar Number 498610

By:   / s / *Daniel P. Butler*
_____
DANIEL P. BUTLER
D.C. Bar #417718
Assistant U.S. Attorney
555 4th Street, N.W., Room 5231
Washington, D.C. 20530
(202) 353-9431
Daniel.Butler@usdoj.gov